ISHAM *against* DOWNER.

Isham
*v.*
Downer

Real and personal estate are equally liable to attachment.

Therefore, where the defendant in a writ of attachment had personal estate sufficient to satisfy the debt demanded, which was liable to attachment and exposed to view; it was held, that this did not preclude the plaintiff from attaching real estate.

In the levy of an execution on real estate, the justice's certificate of the appointment of appraisers and the appraisers' certificate, appended to the officer's return, are not a part of his doings, and need not be recorded.

Where an officer stated in his return, that he had caused the execution and his indorsement thereon to be recorded in the records of land in the town of *C.*; it was held, that this was equivalent to an averment, that he had caused them to be recorded in the records of the town-clerk of of that town.

THIS was an action of ejectment for a piece of land in *Colchester;* tried, on the general issue, at *Norwich, January* adjourned term, 1830, before *Peters,* J.

The plaintiff claimed title by the levy of an execution in his favour against *Elias W. Newton.* The judgment on which that execution issued, was rendered in an action brought by the plaintiff against *Newton,* by writ of attachment, in common form, and served on the 9th of *June* 1827, by attaching the land in question. The defendant claimed title under a deed from *Newton* to *E. W. Parsons* and *Amherst D. Scovill,* executed and recorded, on the 11th of *June* 1827.

At the time of the service of the plaintiff's attachment, *Newton* owned and possessed personal estate, liable to attachment, open and known both to the plaintiff and the officer, and in the house and barn on the land attached, sufficient to secure the plaintiff's debt; and the defendant claimed, and prayed the court to instruct the jury, that under these circumstances, the officer was bound to attach such personal estate, and could not legally attach real estate. But the court charged the jury, that neither the plaintiff, nor the officer who served the plaintiff's attachment, was bound to take the personal estate of the debtor, but that his real estate was liable to be taken, by such attachment, notwithstanding his ownership and possession of personal estate.

The plaintiff offered in evidence the execution against *Newton* and the return of the sheriff thereon; at the close of which the sheriff had certified, that he had caused the execution and

his indorsement thereon to be recorded in the records of land <span>New-London,</span> in the town of *Colchester.* To this return the justice's certifi-<br>July, 1830.<br>cate of the appointment of the appraisers, was appended. It <span>Isham</span> was proved and admitted, that these certificates had not been re-<span>v.</span><br>corded in the town-clerk's office. The defendant thereupon <span>Downer.</span> claimed, that the levy was fatally defective, and the return was not admissible evidence in support of the plaintiff's title. The judge overruled this objection, and admitted the return in evidence ; and instructed the jury, that the levy was valid to convey the title to the plaintiff.

The jury returned a verdict for the plaintiff, and the defendant moved for a new trial.

*Goddard* and *Isham,* in support of the motion, contended, 1. That the plaintiff could not attach the real estate of the debtor, when he had personal estate, exposed and liable to attachment, sufficient to secure the plaintiff's debt. As the service of attachments and the levy of executions depend upon statutory provision, the requirements of the statute must be *strictly* pursued. As to the *process* of attachment, the old and the revised statutes do not, perhaps, essentially differ. *Stat.* 31. ed. 1808. *Stat.* 34. *revis.* 1821. If there is any difference, it is this : By the new statute, attachments cannot be *granted* against the lands or person, except for want of goods and chattels ; but by the old law, perhaps they might be granted ; and when served, the expression is, " the service shall be the attaching of the defendant's estate or person." *Stat.* 32, 3. ed. 1808. The process, however, is not very important. The material question is, how is it to be *served ?* The language of the statute in force when this attachment was served, is plain and definite : " An attachment shall be served, by attaching the goods and chattels of the defendant, or, if none can be found, by attaching the person or lands of the defendant." *Stat.* 36. *revis.* 1821. If there has been any usage to attach real and personal estate indiscriminately, it may be accounted for, by the *general* phraseology of the old statute. But whatever may have been its origin ; or how uniformly or extensively soever it may have prevailed ; it cannot controul an explicit legislative enactment. The present statute authorizes the attachment of the defendant's land, in one case only ; and that is, where none of his goods and chattels can be found. The object of the legis-

New-London,
July, 1830.

Isham
v.
Downer.

lature was, to secure personal liberty, and to protect a man's domicile, until other means of satisfaction had been exhausted.

2. That the levy was defective, because the certificates of the justice and of the appraisers, which are attached to the officer's return, were not recorded in the town-clerk's office. That they were not in fact recorded there, was admitted on the trial; and the return does not state, that they were recorded there.

3. That the levy was defective, because it does not appear, that the execution and the officer's indorsement thereon of his proceedings, were recorded in the records of the town-clerk. *Stat.* 58. *tit.* 2. *s.* 77. The averment in the return, is, that the officer had caused the execution and his indorsement thereon to be recorded *in the records of land*, in the town of *Colchester. Non constat* that these records were the records of the town-clerk.

*Strong* and *J. W. Huntington*, contra, contended, 1. That the debtor, and of course, those who hold under him, cannot complain of the attachment of real estate, though personal property might have been found. Any direction to attach personal in preference to real estate, must be referred to the officer's duty to his employer. 1 *Swift's Dig.* 590.

In the first place, there is no substantial difference between the statute before and since the late revision. The *forms* of process are exactly the same. *Stat.* 351. *ed.* 1808.—242,3. *revis.* 1821. 1 *Swift's Dig.* 590.

Secondly, the old statute, for more than a century, and the new one since the revision, have uniformly received the construction claimed by the plaintiff.

Thirdly, a different construction would prove most injurious both to creditor and debtor. The creditor would be obliged to seek for personal estate, though at a distance, and thus lose security on real, at hand. And he would, in all cases, have to settle questions of ownership and liability to attachment as to personal estate, before he could safely resort to real. The debtor would have his business broken up, and his credit destroyed, by the attachment and removal of his personal property; would be subjected to great expense, in the removal, custody and preservation of it; and would be deprived of the use of it. By the attachment of his real estate, he would not be interrupted in the use and enjoyment of it; and if execution should be obtained against him, he would then have the option

to pay it, to turn out personal property to satisfy it, or to suffer it to be levied upon his lands.

2. That the statute does not require the justice's and appraisers' certificates to be recorded in the town records. *Stat.* 58. *tit.* 2. *s.* 77. They are to be delivered to the officer, as *evidence* necessary to enable him to complete his levy and make out his return ; but, of themselves, they constitute no part of his return.

3. That the statement in the officer's return, that he caused the execution and his indorsement thereon to be recorded " in the records of lands in the town," is equivalent to an averment that he caused them to be recorded in the town-clerk's office. These words are used in the former statute to designate the town-clerk's office. *Stat.* 282. *tit.* 63. *c.* 1. *s.* 6. *ed.* 1808.

PETERS, J. By statute, *tit.* " Civil Actions," *p.* 4. *rev.* 1702. it was provided, " That it shall be in the liberty of any person to take out either a summons or an attachment, in any civil action, against any person, his goods and chattels, and in want of goods and chattels, the lands of the defendant, or his person, may be attached." In prescribing the forms of writs, the legislature put a construction on this section of the statute : " Attach the goods or estate of *N. B.* to the value of      and for want thereof, take the body of said *N. B.*"—(*Stat.* 43.163. *rev.* 1702.)—thereby giving to the plaintiff the choice of personal or real estate, and the privilege of taking the body, if he did not choose to take land, and could not find a sufficiency of chattels. In all the subsequent revisions, the same phraseology is used, and the same form prescribed. Vide *Stat.* 3. 75. *rev.* 1750.—3. 84. *rev.* 1784.—24. 213. *rev.* 1795.—34. 242. *rev.* 1821. This statute has been in force, for more than a century ; and in conformity with this construction has been the invariable practice. This works no injury to the debtor, who may, at any time before the levy of an execution, exonerate his inheritance, by paying the debt, or tendering personal estate. *Stat.* 76. *rev.* 1821.

But it is said, that the statute of 1821, *sect.* 5. contains a new and positive direction, that an attachment shall be served, by attaching the goods or chattels of the defendant, or if none can be found, by attaching the person or land of the defendant. If this construction be adopted, there must be a *total absence* of personal property, to justify taking the person or land of the defendant, or making any other service.

New-London,
July, 1830.

Isham
v.
Downer.

The plaintiff having offered in evidence the execution and sheriff's return thereon, the defendant objected to their admission, because the certificates of the justice and of the appraisers were not recorded in the town-clerk's office. But it appears from the return, that the sheriff caused the execution, with his doings thereon, to be recorded in the records of land in the town of *Colchester;* which is all that the law required of him. Those certificates were not his " doings," but merely his vouchers; and the phrase " town-clerk's office" is perfectly synonymous with the expression " records of land in the town."

The proceedings of the sheriff and the court below are correct. I would not, therefore, advise a new trial.

The other Judges were of the same opinion, except WILLIAMS, J. who, being related to a party in interest, gave no opinion.

New trial not to be granted.